**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOSEPH SHINE, | ) | |
| | ) | JURY DEMANDED |
| Plaintiff, | ) | |
| | ) | Case No. |
| v. | ) | |
| | ) | |
| THE UNIVERSITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff JOSEPH SHINE, by and through his attorneys, makes his complaint against the above-named defendant as follows:

### Jurisdiction and Venue

1. This action arises under the Employee Retirement Income Security Act of 1974 (29 U.S.C.A. §§ 1001, *et seq.*) (ERISA), and more specifically Section 510, 29 U.S.C.A. § 1140. The court has jurisdiction of this matter under Section 502, 29 U.S.C.A. § 1132(e)-(f).

2. Venue is proper under Section 502(e)(2), 29 U.S.C. § 1132(e)(2), as the Defendant is located, the ERISA plans are administered, and all of the acts complained of in this action occurred within the jurisdiction of the United States District Court for the Northern District of Illinois, Eastern Division.

### The Parties

3. At all relevant times, Plaintiff JOSEPH SHINE ("Shine"), resided, and currently resides within Cook County, Illinois.

4. At all relevant times, The University of Chicago ("the University") was and is a duly organized and existing corporation chartered under and by virtue of the laws of the State of

Illinois, with its principal place of business at 5801 South Ellis Avenue, in the City of Chicago, County of Cook, State of Illinois.

**Factual Background**

5. At all relevant times, the University administered Pension Plans for its employees.

6. Effective June 2, 1976, Shine became a full-time employee of the University's Police Department. Thereafter, between 1983 and June 2010, Shine worked for the University as a part-time employee. In June 2010, Shine returned to working as a full-time employee for the University, until his termination on July 12, 2012.

7. The University's 1976 Pension Plan provided that "Each employee who is in the service of the University after January 1, 1976 shall become a Participant in the Plan . . . on the first day of the first month following the later of (a) his thirtieth birthday and (b) the earliest anniversary of his employment date which is the end of two (2) consecutive 12-month periods during each of which he completed 1,000 hours of service for the University." Section 3.3 (emphasis added).

8. The University's 1976 Pension Plan further provided that "An employee may elect to become a Participant in the Plan before the mandatory date . . . as of the first day of the first month on or after any of the following dates: (a) the later of his twenty-fifth (25th) birthday and the earliest anniversary of his employment date, which is the end of a 12-month period in which he completed 1,000 hours of service for the University; (b) the date, before his twenty-fifth (25th) birthday, which is the end of two (2) consecutive 12-month periods during each of which he completed 1,000 hours of service for the University; and (c) his thirtieth (30th) birthday, provided he is scheduled to perform 1,000 hours or more of service a year." Section 3.4 (emphasis added).

9. Shine completed two (2) consecutive 12-month periods of service with the University in June 1978, and reached age thirty (30) in 1984.

10. The University failed to provide Shine with a copy of the Plan or a Summary Plan Description and misinformed Shine that he was not eligible for a pension prior to 2010.

11. In April 2010, the University stated it was pleased to offer, and Shine accepted, a full-time police officer position with the University.

12. In March 2011, the University assigned Shine to work as interim/acting lieutenant.

13. In October 2011, the University officially assigned Shine to a sergeant position.

14. In March 2012, upon information and belief, the University eliminated the lieutenant position, and Shine assumed the lieutenant duties along with sergeant duties to accommodate the University's operational considerations.

15. Based on information and belief, the University's police chief had knowledge of the existence of an ERISA lawsuit, *Quinn v. University of Chicago*, a/k/a *Krok v. University of Chicago*, 11 cv 1092 (N.D. Ill.), ("Quinn Lawsuit").

16. Based on information and belief, the University's police chief had discussed the Quinn lawsuit with members of his staff.

17. On April 19, 2012, the University received a Federal Rule of Civil Procedure 26(a) disclosure in the Quinn Lawsuit, disclosing Shine as a potential class member that may have discoverable information.

18. Following the *Quinn* disclosure, during the next three (3) months, Shine received a verbal warning, written warning, and a suspension, all based on minor, pretextual infractions.

19. On April 29, 2012, Commander Kevin Booker ("Booker") issued Shine a verbal warning related to "unsatisfactory performance of duties".

20. On May 8, 2012, Booker issued Shine a written warning related to "unsatisfactory performance of duties".

21. In June 2012, based on information and belief, Deputy Chief Owens met with Shine and commended his work.

22. On June 28, 2012, Booker issued Shine a second written warning related to "unsatisfactory performance of duties."

23. On July 5, 2012, upon information and belief, the University held a mandatory sergeant meeting where the Chief expressed dissatisfaction with their work performance and informed the sergeants they could step-down to work as regular police officers with "no hard feelings" if they could not adequately perform sergeant duties.

24. On July 12, 2012, without affording Shine an opportunity to accept the Chief's offer to step-down to the police officer position, Shine was issued a notice of discharge relating to "unsatisfactory performance of duties."

25. Subsequently, Shine, through his attorneys, asked the University to reinstate him to a police officer position. The University refused.

## Cause of Action
## COUNT I. Retaliation

26. Paragraphs 3 through 25 are incorporated herein by reference.

27. ERISA § 410, 29 U.S.C. § 1140, makes it unlawful to, *inter alia*, discharge, suspend, or discipline a "participant . . . for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, [or] because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this chapter or the Welfare Plans Disclosure Act."

28. The University was informed that Shine was a potential class member and potential witness in the *Quinn* lawsuit.

29. Ten days following the *Quinn* disclosure, based on information and belief, the University began papering Shine's file with progressive discipline based upon minor, pretextual infractions in an attempt to justify Shine's termination.

30. Based on information and belief, the University disciplined, suspended, and ultimately discharged Shine because he had given information or was about to give information against the University in the *Quinn* class action ERISA lawsuit.

**Prayer for Relief**

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment against the University of Chicago to make Plaintiff whole as follows:

a. Award Plaintiff back pay to compensate for lost wages and benefits caused by his termination by the University;

b. Ordering the University to reinstate Plaintiff to his position as a full-time Sergeant with the University of Chicago Police Department or awarding Plaintiff reasonable front pay;

c. Awarding Plaintiff's attorney fees, court costs and all other reasonable costs incurred.

d. Granting Plaintiff such other and further relief as the court may deem just and proper.

Dated: October 11, 2012

Respectfully Submitted,

JOSEPH SHINE,

By: /s/ Jac A. Cotiguala
One of Plaintiff's Attorneys

Jac A. Cotiguala
Brian D. Massatt
JAC A. COTIGUALA & ASSOCIATES
431 South Dearborn Street, Suite 606
Chicago, Illinois 60605
Telephone: (312) 939–2100