IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEPH SHINE, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 12 C 8182 |
| ) | |
| ) | Judge Virginia M. Kendall |
| THE UNIVERSITY OF CHICAGO ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Joseph Shine filed this suit against the University of Chicago under Section 510 of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140. Shine, a former Sergeant in the University Police Department, was terminated from his employment in July 2012. Shine alleges that the University's stated reason for his termination, unsatisfactory performance, was pretextual and that he in fact terminated in retaliation for his status as a potential class member and witness in a benefits lawsuit against the University. The University moved to dismiss Shine's Complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. According to the University, Shine's Complaint is deficient because it fails to allege that he exhausted administrative remedies available to him as required by ERISA. For the reasons stated herein, the University's Motion to Dismiss is granted.

## BACKGROUND

The following facts are taken from Shine's Complaint and are assumed to be true for purposes of this Motion to Dismiss. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir.

1

2008). All reasonable inferences are drawn in favor of Shine, the non-moving party. *See Killingsworth v. HSBC Bank*, 507 F.3d 614, 618 (7th Cir. 2007) (citing *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006)).

## I. Shine's Employment with the University

Shine was employed in the University's Police Department from June 2, 1976 until July 12, 2012. (Pl. Complaint, Dkt. No. 1, ¶ 6.) Shine began his employment with the Police Department as a full-time employee but switched to part-time employee status in 1983. (*Id.*) In April 2010, the University offered him a full-time police officer position. (*Id.* ¶ 11.) Shine accepted and resumed full-time status in June 2010. (*Id.* ¶¶ 6, 11.) In March 2011, the University assigned him to work as interim/acting lieutenant and seven months later to a sergeant position. (*Id.* ¶¶ 12-13.) In March 2012, the University eliminated the lieutenant position. (*Id.* ¶ 14.) Shine, at this point a sergeant, assumed lieutenant duties along with sergeant duties to accommodate the University's operational needs. (*Id.*)

Shine alleges that the University's police chief had knowledge of an ERISA lawsuit against the University, *Quinn v. University of Chicago*, a/k/a *Krok v. University of Chicago*, 11 C 1092 (N.D. Ill.) ("Quinn lawsuit"). (*Id.* ¶ 15.) According to Shine, the police chief discussed the lawsuit with members of his staff. (*Id.* ¶16.) On April 19, 2012, the University received discovery disclosures in that lawsuit revealing Shine as a potential class member who may have discoverable information. (*Id.* ¶ 17.)

In the three months following the disclosure, Shine received a verbal warning, written warning, and a suspension, all based on minor, pretextual infractions. (*Id.* ¶ 18.) Shine received the first of these reprimands on April 29, 2012, when Commander Kevin Booker ("Booker") issued Shine a verbal warning related to "unsatisfactory performance of duties." (*Id.* ¶ 19.) Less

2

than two weeks later, on May 8, 2012, Booker issued Shine a written warning, also related to "unsatisfactory performance of duties." (*Id.* ¶ 20.) On June 28, 2012, Booker issued Shine a second written warning related to "unsatisfactory performance of duties." (*Id.* ¶ 22.)

On July 5, 2012, the University held a mandatory sergeant meeting during which the Chief expressed dissatisfaction with the sergeants' work performance. (*Id.* ¶ 23.) The Chief informed the sergeants they could step down to work as regular police officers with "no hard feelings" if they could not adequately perform sergeant duties. (*Id.*) On July 12, 2012, without affording Shine an opportunity to accept the Chief's offer to step-down to the police officer position, Shine was issued a notice of discharge relating to "unsatisfactory performance of duties." (*Id.* ¶ 24.) Shine subsequently asked the University, through his attorneys, to reinstate him to a police officer position. (*Id.* ¶ 25.) The University refused. (*Id.*)

## II. The University's Pension Plan

The University administers pension plans for its employees. The University's 1976 Retirement Income Plan for Employees[1] ("Plan") provided that "[e]ach Employee who is employed by the University after January 1, 1976 shall become a Participant in the Plan … on the first day of the first month following the later of (a) his thirtieth (30th) birthday and (b) the

---

[1] Although Shine has not attached the Plan as an exhibit to his Complaint, the University has submitted it as Exhibit B to its Motion. Generally, a court may not rely on documents outside of the pleading in considering a Rule 12(b)(6) motion to dismiss without converting the motion to a motion for summary judgment. *See* Fed.R.Civ.P. 12(d). However, under the "incorporation-by-reference" doctrine, "it is well settled that in deciding a Rule 12(b)(6) motion, a court may consider 'documents attached to a motion to dismiss … if they are referred to in the plaintiff's complaint and are central to his claim.' " *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (quoting *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994)). The doctrine is designed to "prevent[] a plaintiff from 'evading dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that proves his claim has no merit.' " *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (quoting *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).In this case, Exhibit B is properly before the Court because Shine refers to the Plan throughout his Complaint and relies on it as the foundation for his ERISA claims. *See, e.g., Kolbe & Kolbe Health & Welfare Benefit Plan v. Medical College of Wisconsin*, 657 F.3d 496, 501 (7th Cir. 2011); *Hecker v. Deere & Co.*, 556 F.3d 575, 582-83 (7th Cir. 2009).

earliest anniversary of his employment date which is the end of two (2) consecutive 12-month periods during each of which he completed 1,000 hours of service for the University." (*Id.* ¶ 7, Ex. B § 3.3.) Shine completed two consecutive 12-month periods of service with the University in June 1978 and reached age thirty in 1984. (*Id.* ¶ 9.) Shine alleges the University failed to provide him with a copy of the Plan or a Summary Plan Description and misinformed Shine that he was not eligible for a pension prior to 2010. (*Id.* ¶ 10.) The Plan further provided that "[a]n Employee may elect to become a Participant in the Plan before the mandatory date … as of the first day of the first month on or after any of the following dates: (a) the later of his twenty-fifth (25th) birthday and the earliest anniversary of his employment date, which is the end of a 12-month period in which he completed 1,000 hours of service for the University; (b) the date, before his twenty fifth (25th) birthday, which is the end of two (2) consecutive 12-month periods during each of which he completed 1,000 hours of service for the University; and (c) his thirtieth (30th) birthday, provided he is scheduled to perform 1,000 hours or more of service a year. (*Id.* ¶ 8, Ex. B § 3.4.)

The Plan also created a "Retirement Committee" which was responsible for rendering advice on the administration of the Plan and deciding appeals of the denial of claims. (Ex. B, § 12.1.) The Plan further set forth a procedure for making claims and for the review of claim decisions. (*See* Ex. B, § 12.3.) First, a Participant may request review of decisions by the Retirement Committee "within 60 days following his receipt of written notification of the denial of the claim." (*Id.*) The Retirement Committee is required to "decide the matter presented for review within sixty (60) days of receiving the request" and shall render a decision "no more than one hundred and twenty (120) days after receipt." (*Id.*) The Retirement Committee's decision "shall be in writing and shall include specific reasons for the decision … and shall constitute the

final disposition of the matter under the Plan." (*Id.*)

## **STANDARD OF REVIEW**

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all facts alleged in the complaint and construes all reasonable inferences in favor of the plaintiff. *Killingsworth*, 507 F.3d at 618 (citing *Savory*, 469 F.3d at 670); *accord Murphy*, 51 F.3d at 717. To state a claim upon which relief can be granted, a compliant must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true . . . 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To determine whether a complaint meets this standard, the "reviewing court [must] draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678. When there are well-pleaded factual allegations, the Court assumes their veracity and determines if they plausibly give rise to an entitlement to relief. *Id.* at 679. A claim has facial plausibility when the pleaded factual content allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See Id.* at 678.

## **DISCUSSION**

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138 (1990) (quoting *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 90 (1983)). Section 510 of ERISA, the Act's antiretaliation provision, makes it unlawful to, *inter alia*, "discharge, fine, suspend, expel, discipline, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding" under ERISA. 29 U.S.C. §

1140. In this case, Shine's alleges that he was discharged in response to being named as a potential witness in another ERISA proceeding against the University.

A plaintiff in an ERISA suit must exhaust his internal administrative remedies before filing a lawsuit in federal court. *See Zhou v. Guardian Life Ins. Co. of America*, 295 F.3d 677, 679 (7th Cir. 2002); *Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 873 (7th Cir. 1997) ("Even without [a provision requiring exhaustion], the plaintiff, as a matter of the federal common law of ERISA, would be required to exhaust his ERISA required internal remedies before being allowed to sue.") (citations omitted). The exhaustion requirement "furthers the 'goals of minimizing the number of frivolous lawsuits' and enables the preparation of a more complete factual record for judicial review." *Zhou*, 295 F.3d at 679 (quoting *Gallegos v. Mt. Sinai Med. Ctr.*, 210 F.3d 803, 807-08 (7th Cir. 2000)). Exhaustion also "promote[s] a non-adversarial dispute resolution process, and decrease[s] the cost and time of claims settlement." *Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir. 1996) (citing 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1; *Comm'ns Workers of Amer. v. American Tel. & Tel.*, 40 F.3d 426, 432 (D.C. Cir. 1994) ("Exhaustion may render subsequent judicial review unnecessary because a plan's own remedial procedures will resolve many claims.")); *Powell v. AT&T Comm'ns, Inc.*, 938 F.2d 823, 825 (7th Cir. 1991) ("Congress intended plan fiduciaries, not federal courts, to have primary responsibility for claims procession."). The decision to require exhaustion as a prerequisite to bringing a federal lawsuit remains a matter within the discretion of the trial court. *See Stark v. PPM America, Inc.*, 354 F.3d 666, 671 (7th Cir. 2004) (citing *Powell*, 938 F.2d at 825); *Lindemann*, 79 F.3d at 650. A district court's decision to dismiss a complaint on exhaustion grounds is reviewed for an abuse of discretion. *Zhou*, 295 F.3d at 679 (citing *Shawnee Trail Conservancy v. U.S. Dep't of Agriculture*, 222 F.3d 383, 389 (7th Cir. 2000));

*Lindemann*, 79 F.3d at 650 (trial court's decision will "be reversed only if it is obviously in error").

Generally, absent specific requirements provided for by statute or by the Seventh Circuit, a plaintiff is not obligated under the federal notice pleading standard to plead in anticipation of defenses. *See Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004) ("Orders under Rule 12(b)(6) are not appropriate responses to the invocation of defenses, for plaintiffs need not anticipate and attempt to plead around all potential defenses."); *Tregenza v. Great American Comm'ns Co.*, 12 F.3d 717, 718 (7th Cir. 1993) (plaintiff is not required to plead in anticipation of defeating an affirmative defense). However, in *Wilczynski v. Lumbermens Mut. Casualty Co*, the Seventh Circuit addressed whether an ERISA plaintiff had sufficiently alleged in her complaint facts justifying her failure to exhaust administrative remedies. 93 F.3d 397, 402-04 (7th Cir. 1996). District courts in this Circuit have interpreted *Wilczynski* to mean that a district court judge may address the exhaustion issue at the pleading stage. *See, e.g., Ahr v. Commonwealth Edison Co.*, No. 03 6645, 2005 WL 6115023, at *3 (N.D. Ill. Feb. 24, 2005) ("In [*Wilczynski*] the Seventh Circuit made it clear that a court could address the exhaustion issue at the pleading stage."); *Potter v. ICI Americas Inc.*, 103 F.Supp.2d 1062, 1065-66 n. 2 (S.D. Ind. Oct. 4, 1999) ("Although we ordinarily prefer to consider exhaustion on a motion for summary judgment, we may consider the failure to exhaust administrative remedies on a motion to dismiss.") (citations omitted); *Coats v. Kraft Foods, Inc.*, 12 F.Supp.2d 862, 869 (N.D. Ind. 1998) ("[I]f there were not a pleading requirement, the [*Wilczynski*] court would not have needed to address whether the plaintiff adequately plead facts on exhaustion."). Furthermore, the Seventh Circuit has interpreted ERISA to allow district courts in their discretion to require exhaustion of administrative remedies as a prerequisite to filing a federal

7

suit. *See Powell*, 938 F.2d at 826 ("We take this opportunity to reaffirm this court's notion that a district court may properly require exhaustion of administrative proceedings prior to the filing of a claim involving an alleged violation of an ERISA statutory provision."); *Wilczynski*, 93 F.3d at 401 ("Although the ERISA statute is silent on the issue of whether exhaustion of administrative remedies is a prerequisite to suit, this court [has] held … that a district court properly may require the exhaustion of administrative proceedings prior to the filing of a claim alleging the violation of an ERISA statutory provision.") (internal citations omitted). The exhaustion requirement applies to claims brought under Section 510. *See Lindemann*, 79 F.3d at 650; *Powell*, 938 F.2d at 825-26; *see, e.g., Baer v. Masonite Corp.*, No. 3:11cv124, 2011 WL 2929166, at *3-4 (N.D. Ind. July 15, 2011) (dismissing Section 510 claim for failure to exhaust administrative remedies); *Estes v. Beta Steel Corp.*, No. 2:06-CV-221, 2006 WL 3542731, at *8 (N.D. Ind. Nov. 7, 2006) (same); *Coats*, 12 F.Supp. at 868 (same).

Shine concedes that he has not alleged facts showing exhaustion of administrative remedies. However, Shine maintains that although the exhaustion doctrine applies to claims brought under the first sentence of Section 510, which protects "participants and beneficiaries" who seek to exercise their rights an employee benefit plan, it does not apply to claims brought pursuant to the second sentence of the Section, which protects individuals who may provide or have already provide information or testimony in an ERISA inquiry or proceeding. *See* 29 U.S.C. § 1140. According to Shine, administrative review of claims brought under the second sentence of Section 510 would provide no benefit because such claims do not require Plan interpretation or agency expertise.

This argument was specifically rejected by the Seventh Circuit in *Lindemann*, where the plaintiff made a similar argument:

> [Plaintiff] argues that we should carve out an exception to the exhaustion requirement for situations such as hers. She agrees that the exhaustion requirement makes sense where the plan participant is seeking to recover the actual benefits allegedly interfered with because there an administrator's interpretation of the plan is useful to a court reviewing the benefits claim. However, she argues that where the plaintiff's claim is for wrongful discharge and she is seeking only reinstatement and back pay, an administrator's interpretation of the plan is irrelevant and the exhaustion requirement is thus useless.

*Lindemann*, 79 F.3d at 649-50. In rejecting this argument, the court held that "an administrator's interpretation of the plan is not the only useful function served by the exhaustion requirement," explaining that "Congress's apparent intent in mandating internal claims procedures found in ERISA was to minimize the number of frivolous lawsuits, promote a non-adversarial dispute resolution process, and decrease the cost and time of claims settlement." *Id.* Therefore exhaustion "supports the important public policy of encouraging private rather than judicial resolution of disputes under ERISA" regardless of whether the plaintiff "structures her claim to seek the actual benefits allegedly interfered with, or to seek other remedies such as reinstatement." *Id.* at 650 (quoting *Kross v. Western Elec. Co.*, 701 F.2d 1238, 1246 (7th Cir. 1983)). There is consensus among the Circuit Courts that "[t]hese advantages outweigh a plaintiff's relatively minor inconvenience of having to pursue her claims administratively before rushing to federal court …." *Id.* (collecting cases).

Shine distinguishes *Lindemann*, *Powell*, *Kross*, and the various district court decisions cited by the University by pointing out that those cases did not involve Section 510 claims alleging unlawful discharge of an individual disclosed as a possible witness in an ERISA benefit case. Indeed every case cited by the University involved Section 510 retaliation claims based on a plaintiff's exercise of rights under a benefit plan, not retaliation for a plaintiff's involvement in an ERISA proceeding. However, Shine cites to no authority holding or even suggesting that this

distinction is of any consequence. Retaliation claims under ERISA, whether they allege retaliation for exercising rights under an employee benefit plan *or* retaliation against potential witnesses, generally do not require plan interpretation. The Court finds no reason to require exhaustion in claims brought under the first sentence of Section 510 while carving out an exception in cases brought under the second sentence. A plaintiff may only be excused from exhausting administrative remedies under ERISA in two instances: (1) when a plaintiff is denied meaningful access to administrative procedures; or (2) when exhaustion would prove futile. *Smith v. Blue Cross & Blue Shield United of Wis.*, 959 F.2d 655, 659 (7th Cir. 1992). A lack of meaningful access to administrative procedures may be found where, for example, a claimant attempts to initiate higher levels of review but is denied access to those procedures, *see, e.g., Carter v. Signode Ind., Inc.*, 688 F.Supp. 1283, 1287 (N.D. Ill. 1988), or where a claimant is not told a review procedure is available or how to file an appeal, *see, e.g., Boesl v. Suburban Trust & Sav. Bank*, 642 F.Supp. 1503, 1516 (N.D. Ill. 1986). Here, Shine has not alleged a lack of meaningful access to administrative remedies. Therefore, the first exception to the exhaustion requirement does not apply.

The second exception to the exhaustion requirement – futility – applies only where a plaintiff shows that "it is certain that [his] claim will be denied on appeal, not merely that [he] doubts that an appeal will result in a different decision." *Lindemann*, 79 F.3d at 650. In this case, Shine has not alleged in his Complaint that exhaustion would be futile, nor does he cite to any provision in the Plan stating that the administrator lacks the authority to decide whether an employee discharged in violation of Section 510 is entitled to relief. In his response brief, Shine cites to a provision stating that the Plan does not create a contractual relationship between the University and Plan participants and that the University is free to terminate participants'

employment at will.[2] (*See* Ex. B, § 14.2.) However, Shine does not allege in his Complaint that his claim will be denied on appeal based on this provision, nor does he explain how the provision, which according to the University is simply a disclaimer that divests the administrator of authority to review Section 510 claims involving retaliation against potential witnesses, renders exhaustion futile in his case. *Nauman v. Abbott Laboratories*, 04 C 7199, 2005 WL 1139480 (N.D. Ill. Apr. 27, 2005), upon which Shine relies heavily, does not persuade the Court otherwise. In *Nauman*, the plaintiffs alleged in their complaint that exhaustion would be futile because the plan at issue did not provide a procedure or remedy for reviewing the type of claim asserted. *Nauman*, 2005 WL 1139480, at *2. The court held that under such circumstances the plaintiffs were not required to plead exhaustion. *Id*. Unlike the plaintiff in *Nauman*, Shine does not allege in his Complaint that exhaustion would be futile. Therefore the futility exception does not apply. *See Zhou*, 295 F.3d at 680 ("When a party has proffered no facts that the review procedure that he initiated will not work, the futility exception does not apply.")

Accordingly, the Court finds that Shine's allegation that the defendant violated Section 510 fails to state a claim because Shine has not plead exhaustion of administrative remedies, alleged a lack of meaningful access to such remedies, or alleged that exhaustion would be futile.

---

[2] The provision states: "Nothing in this Plan shall be construed as a contract of employment between the University and an Employee, or as a right of an Employee to be continued in the employment of the University, or as a limitation of the right of the University to discharge any of its Employees, with or without cause." (Ex. B, § 14.2.)

## CONCLUSION

For the reasons stated above, the University's Motion to Dismiss is granted. Shine's Complaint is hereby dismissed. However this dismissal is without prejudice to allow Shine to first pursue his administrative remedies under the Plan or file an amended complaint alleging facts showing that an exception to the exhaustion requirement applies.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: March 28, 2013